UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TULLY'S COFFEE ASIA PACIFIC INC., <br><br> Plaintiff, <br><br> v. <br><br> ASIA FOOD CULTURE MANAGEMENT PTE LTD, <br><br> Defendant. | CASE NO. C13-2134 MJP <br><br> ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant Asia Food Culture Management PTE LTD's ("AFCM") Motion for Summary Judgment, arguing Plaintiff Tully's Coffee Asia Pacific, Inc. ("TCAP") lost its management authority over Tully's Coffee Asia Pacific Partners, LP ("TCAPPLP") when TC Global, TCAP's parent company, engaged in an "Indirect Transfer." (Dkt. No. 8.) Plaintiff responded to this motion on its merits and also argued it needed additional discovery in order to present the Court with a proper record. (Dkt. No. 13.) The Court considered the Motion for Summary Judgment, the Response, the Reply

ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 1

(Dkt. No. 15), and all related documents. The Court DENIES the Motion for Summary Judgment.

## Background

AFCM and TCAP debate how the limited partnership agreement between them should be interpreted. AFCM argues TC Global made an "Indirect Transfer" to Global Baristas ("GB"), giving AFCM management authority over TCAPPLP. (Dkt. No. 8.) TCAP argues it did not lose its management authority over TCAPPLP because TC Global did not make an "Indirect Transfer" to GB. (Dkt. No. 13.)

### A. Formation of TCAPPLP

TC Global was formed in 2001, and it conducts a business of wholesale coffee roasting and sales. (Dkt. No. 13 at 8.) TC Global formed TCAP as a wholly owned subsidiary in order to expand Tully's in Asia through an Exclusive License Agreement in October 2007. (Dkt. No. 8 at 4.)

On December 21, 2007, TCAP and AFCM entered into a limited partnership agreement to create TCAPPLP. (Dkt. No. 8 at 5.) TCAP transferred all rights and benefits under the Exclusive License Agreement to TCAPPLP. (Id.) TCAP became the general partner, and AFCM became the limited partner. (Id.) AFCM and TCAP each hold a 50 percent interest in TCAPPLP. (Id. at 6.) The pertinent language of the limited partnership agreement is:

> 13.4 Notwithstanding any other section of this agreement, no Partner may transfer a portion or the entirety of the control of themselves as a corporate entity . . . without the express consent of the Partner ("*Indirect Transfer*"). Should such an Indirect Transfer occur without consent, the transferee shall have no rights of management in the Partnership through the partner entity, nor shall they have the ability to bind the Partnership through the partner entity.

(Dkt. No. 14-1 at 32.) A "Partner" is the General Partner or the Limited Partner. (Id. at 16.) A "General Partner" is "TCAP, any person or other entity substituted for it, and any additional General Partner admitted to the Partnership pursuant to this Agreement." (Id.) A "Limited Partner" is "AFCM, any Persons or other entity substituted for him, and any additional Limited Partners admitted to the Partnership pursuant to this Agreement." (Id.)

### B. TC Global Files Bankruptcy

TC Global filed Chapter 11 bankruptcy on October 12, 2012, in the U.S. Bankruptcy Court for the Western District of Washington. See In re: TC Global, Inc., Case No. 12-20253-KAO, Dkt. No. 1 (W.D. Wash 2012). TC Global sold most of its assets to GB. (Dkt. No. 8 at 7.) The Sale Order and the Asset Purchase Agreement stated all of TC Global's interest in TCAP would be sold to GB. (Id.)

### C. Three Separate Actions

Interested parties now debate whether the Exclusive Agreement was terminated with the bankruptcy and whether TC Global made an "Indirect Transfer" to GB. Two actions discuss whether the Exclusive Agreement was terminated: a state court action and a bankruptcy court action. The action at issue here discusses whether TC Global made an "Indirect Transfer" to GB.

#### a. State Court Action

GB sought declaratory relief that the TCAPPLP Exclusive License has been terminated in state court. (Case No. 13-2-36173-6 SEA, Dkt. No. 8 at 8.) The case was removed to the U.S. Bankruptcy Court for the Western District of Washington on November 15, 2013, because whether the Exclusive License was terminated by the bankruptcy Sale Order is an issue within the bankruptcy court's jurisdiction. Global Baristas LLC v. DK Retail Co Ltd et al., Case No.

13-01585-KAO, Dkt. No. 1 (W.D. Wash. 2013). GB filed a motion to remand to state court on November 17, 2013. (Dkt. No. 8 at 9.) The Honorable Judge Karen Overstreet denied GB's motion to remand. (Id.)

      **b. Bankruptcy Court Action**

TCAPPLP and AFCM filed a separate proceeding in the bankruptcy court seeking a declaratory judgment that the Exclusive License was assumed by TC Global and then assigned to GB. In re TC Global Inc., Case No. 13-1579-KAO, Dkt. No. 1 (W.D. Wash. 2013). On December 12, 2013, TCAPPLP and AFCM filed a motion for summary judgment requesting the bankruptcy court rule the Exclusive License was not terminated under the court's Sale Order and it remains in full force and effect. Id. at Dkt. No. 13. On the same day, AFCM filed a motion to consolidate the removed state court action and the bankruptcy court action. Id. at Dkt. No. 11. On December 26, 2013, GB filed a motion to dismiss the bankruptcy proceeding in favor of the state court action or to stay the bankruptcy proceeding pending a resolution of the state court action. Id. at Dkt. No. 22. At a hearing on January 17, 2014, the Honorable Judge Karen Overstreet stayed proceedings before her until the filing of this Order. Id. at Dkt. No. 38.

      **c. Federal Court Action**

On November 22, 2013, TCAP filed this action in the Western District of Washington seeking a declaratory judgment that GB's purchase of TCAP from TC Global was not an "Indirect Transfer" pursuant to Section 13.4 of the limited partnership agreement and that TCAP retains the exclusive right to manage TCAPPLP. (Dkt. No. 1 at 1.) AFCM filed this Motion for Summary Judgment. (Dkt. No. 8.)

## Analysis

### A. Legal Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(a) "if the movant shows that there is no genuine dispute as to any material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the moving party has met its burden of showing no genuine issue of fact exists, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. The non-moving party must come forward with specific facts that show a genuine issue exists for trial. Id. at 587. No genuine issue for trial exists if the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Id. Washington State law governs the construction of the limited partnership agreement between TCAP and AFCM. (Dkt. No. 10-2 at 25.) In a contract case, summary judgment is proper "if the written contract, viewed in light of the parties' objective manifestations, has only one reasonable meaning." Wm. Dickson Co. v. Pierce Cnty., 128 Wn. App. 488, 492 (2005).

"Washington follows the objective manifestation theory of contract interpretation, under which courts attempt to ascertain the intent of the parties 'by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties.'" William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust v. Port of Everett, 159 Wn. App. 389, 399-400 (2011), quoting Hearst Commc'n, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503 (2005). The court imputes "an intention corresponding to the reasonable meaning of the words used[,]" and it "generally give[s] words in a contract their ordinary, usual,

and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Hearst Commc'n, 154 Wn.2d at 503-04. "Interpretations giving lawful effect to all the provisions in a contract are favored over those that render some of the language meaningless or ineffective." Grey v. Leach, 158 Wn. App. 837, 850 (2010). The construction of ambiguous terms in a contract is a legal question unless extrinsic evidence is used to aid in interpretation. Lamar Outdoor Adver. v. Harwood, 162 Wn. App. 385, 395 (2011). If extrinsic evidence is used, then interpretation of a contract becomes a question of fact. See Wash. State Maj. League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co., 176 Wn.2d 502, 517 (2013). Extrinsic evidence may not be used to show an intention that is independent of the contract or to contradict, vary, or modify the written word. William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust, 159 Wn. App. at 399-400. "[E]xtrinsic evidence of a party's subjective, unilateral intent as to the contract's meaning is not admissible." Id.

### B. AFCM Fails to Interpret the Agreement Using the Plain Language and Cannot Use Extrinsic Evidence to Modify a Term Already Defined

AFCM's Motion for Summary Judgment is DENIED for two reasons: 1) AFCM uses its own definition of "Partner," not the definition of "Partner" in the agreement, to interpret Section 13.4; and 2) AFCM uses extrinsic evidence to modify the term "Partner" even though it is defined in the agreement.

#### a. TC Global is Not a Partner Under the Plain Language

AFCM argues TC Global's transfer of 100 percent of its equity interest in TCAP to GB without AFCM's consent is an "Indirect Transfer" under Section 13.4 of the limited partnership agreement; however, AFCM fails to recognize the plain language of the agreement. (Dkt. No. 8 at 12.) Section 13.4 states:

> Notwithstanding any other section of this agreement, no Partner may transfer a portion or the entirety of the control of themselves as a corporate entity . . . without the express consent of the Partner ("*Indirect Transfer*").

(Dkt. No. 14-1 at 32.) A "Partner" is the General Partner or Limited Partner. (Id. at 16.) A "General Partner" is "TCAP, any person or other entity substituted for it, and any additional General Partner admitted to the Partnership pursuant to this Agreement." (Id.)

According to the agreement's definition of "Partner," TC Global is not a Partner. See Grey, 158 Wn. App. at 850. The only Partners are TCAP and AFCM. If the Parties had intended the definition of "Partner" to include the parent entities of the Partners, they would have included language to make it so. (Dkt. No. 8 at 13.) AFCM may have subjectively intended this section to include the parent entity of TCAP, which was TC Global, but Washington courts do not ascertain the intent of parties by focusing on "unexpressed subjective intent." Hearst Commc'n, 154 Wn.2d at 503. TCAP still retains control over TCAPPLP because it did not make an "Indirect Transfer."

AFCM argues when Sections 13.4, 13.4.1, and 13.4.2 are read together, "the only reasonable interpretation is that an Indirect Transfer includes the transfer of ownership of a Partner by its parent entity[,]" but this interpretation ignores the definition of "Partner" in the agreement. (Dkt. No. 8 at 13.) Sections 13.4.1 and 13.4.2 state Section 13.4 does not apply where:

> 13.4.1 A transfer or a series of transfers through which a party or parties other than Tully's acquire a total of not more than 49% ownership interest in General Partner . . . [or to]
>
> 13.4.2 A transfer or a series of transfers of equity securities in AFCM, provided that the transferee or recipient of the newly issued equity securities and any affiliates are not: (a) engaged in the retail coffee business, (b) a person or entity of questionable moral or financial character, (c) a person or entity who would be otherwise considered of nefarious character, (d) a person or entity who would place the Partnership in violate of United States law . . . and (e) Kouta Matsuda or

a Controlled Entity maintains his or its position and power to manage, operate and control the affairs of AFCM.

(Dkt. No. 14-1 at 32.)  AFCM's interpretation is not reasonable: "Partner" is defined in Section 1.10, and it does not include the parent entities. (Id. at 16.)  Nowhere in the sections at issue (1.10, 13.4, 13.4.1, and 13.4.2) is "parent entity" mentioned.  This Court must give "lawful effect to all the provisions in the contract[,]" including the definitions.  Grey, 158 Wn. App. at 850.  AFCM is asking the Court to infer from Sections 13.4.1 and 13.4.2 the Parties' subjective intent, but this is inappropriate because "Washington follows the objective manifestation theory of contract interpretation."  William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust, 159 Wn. App. at 399-400.  Even if AFCM's interpretation of Section 13.4 were reasonable, summary judgment is not appropriate when more than one reasonable interpretation of that section exists.  See Wm. Dickson, 128 Wn. App. at 492.

The cases AFCM relies on do not apply because none of them use Washington law for interpreting the contracts at issue.  See e.g., Or. RAS No. 6 v. Castle Rock Cellular of OR, et al., 840 F.Supp. 770 (D. Or. 1993).  While not relying on Washington law, the only case remotely related is In re Donald G. Huber, No. 11-41013, 2013 WL 6184972 (Bankr. W.D. Wash. Nov. 25, 2013) because it describes the majority view, which the Ninth Circuit follows, "as to whether the transfer of upstream ownership interests amounts to a transfer of the downstream partnership interest requiring consent."  Id. at *4.  The majority says, "transfer restrictions must expressly state that they apply to upstream entities" and "'silence on the issue is presumed to indicate an intention by the parties not to restrict transfer of ownership of upstream entities.'"  Id. (internal citation omitted).  The majority view reflects Washington law regarding contract interpretation.  See Hearst Commc'n, 154 Wn.2d at 503.  The Huber court concluded a parent corporation has a separate existence from its subsidiary. 2013 WL 6184972, at *6.  Likewise, TC Global has a

separate existence from its subsidiary TCAP and was not a "Partner" under the plain language of the contract. TCAP did not make an "Indirect Transfer" because TC Global was the entity that transferred its interest in TCAP to GB. (Dkt. No. 8 at 7.)

### b. Extrinsic Evidence Cannot Modify the Definition of "Partner"

AFCM argues extrinsic evidence shows the parties intended Section 13.4 to apply to parent entities as well as to the partners of TCAPPLP, but extrinsic evidence cannot be used "to contradict, vary, or modify the written word." William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust, 159 Wn. App. at 399-400. First, AFCM states Section 13.4.1 was drafted because AFCM wanted assurance that it would take over the management role if Tully's was purchased by a competitor who was no longer interested in supporting TCAPPLP. (Dkt. No. 8 at 20.) Although this may have been AFCM's subjective intent, the plain language does not reflect this. The agreement states Section 13.4 does not apply to the following:

> 13.4.1 A transfer or a series of transfers through which a party or parties other than Tully's acquire a total of not more than 49% ownership interest in General Partner[.]

(Dkt. No. 14-1 at 32.) Section 13.4.1 does not change the fact that Section 13.4 only applies to a "Partner," and TC Global is not a Partner under the definition in Section 1.10 of the agreement. (Id. at 16.)

Second, AFCM states GB knew TC Global's transfer of its interest in TCAP to GB was an "Indirect Transfer" because it requested a waiver of Sections 13.4 and 13.5 prior to the close of the bankruptcy sale. Id. This may be true, but as discussed above, extrinsic evidence cannot be used "to contradict, vary, or modify the written word." William G. Hulbert, Jr. and Clare Mumford Hulbert Revocable Living Trust, 159 Wn. App. at 399-400. AFCM argues GB's

subsequent conduct shows it construed "Partner" to include parent entities, but the definition states a "Partner" is either TCAP or AFCM. (Dkt. No. 14-1 at 16.)

AFCM relies on Berg v. Hudesman, 115 Wn.2d 657, 667-68 (1990) to argue extrinsic evidence may be used to ascertain the parties' intent even if the contract is unambiguous, but AFCM's reliance on Berg is misplaced. The Hearst Commc'n Court explained Washington courts have been confused as a result of the Berg opinion. 154 Wn.2d at 503. The Court cleared up this confusion, stating extrinsic evidence cannot be used to contradict, vary, or modify the written word. Id. AFCM is using extrinsic evidence to modify the definition of "Partner" in the agreement, which is not appropriate according to Hearst Commc'n because the term is already defined. 154 Wn.2d at 505 (extrinsic evidence could not be used to define a term that already had a definition in the contract).

### C. Even if Extrinsic Evidence Could Modify the Definition of "Partner," Interpretation of the Agreement Would Become a Question of Fact

Even if AFCM could successfully argue the definition of "Partner" should be modified by extrinsic evidence, interpretation of the agreement would become a question of fact. See Wash. State Maj. League Baseball Stadium Pub. Facilities Dist., 176 Wn.2d at 517. AFCM failed to recognize a part of the RESTATEMENT (SECOND) OF CONTRACTS (1981) that Berg adopted. 115 Wn.2d at 667-68. Section 212 of the RESTATEMENT (SECOND) OF CONTRACTS (1981) states:

> A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.

Id. 667. Even if AFCM could use extrinsic evidence to modify the definition of "Partner," the credibility of that extrinsic evidence is a question of fact for the jury; therefore, summary judgment would not be appropriate.

**D. This Court Will Not Address the Issue of Timeliness Because Plaintiff's Interpretation of the Agreement is the Only Reasonable Interpretation**

TCAP argues the Motion for Summary Judgment is premature because it must have the opportunity to conduct discovery in order to present the Court with a proper record, but this Court will not address the timeliness issue because TCAP's interpretation of the agreement is the only reasonable interpretation based on the plain language. (Dkt. No. 13 at 14.) TC Global did not make an "Indirect Transfer" because it is not a "Partner" under the agreement's definition. (Dkt. No. 14-1 at 16.)

## Conclusion

The Court DENIES Defendant's Motion for Summary Judgment. Plaintiff's interpretation is the only reasonable interpretation based on the plain language. TC Global did not make an "Indirect Transfer" to GB because it is not a "Partner" in the agreement between TCAP and AFCM.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of February, 2014.

Marsha J. Pechman
Chief United States District Judge